IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TAMARA REMINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| HY-VEE, INC., | ) | |
| **Serve Registered Agent:** | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street, Suite 3C | ) | |
| Topeka, Kansas 66603 | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

Plaintiff Tamara Remington, by and through counsel, and for her causes of action against Defendant Hy-Vee, Inc., states and alleges as follows:

## PARTIES

1.     Plaintiff Tamara Remington ("Remington" or "Plaintiff") is an individual residing at 9303 W. 77th Terrace, Apt. 102, Overland Park, Kansas 66204, and she was an employee of Defendant for approximately five (5) years until her wrongful termination effective on or about October 17, 2019.  Plaintiff is a 51-year old female.

2.     Defendant Hy-Vee, Inc. (hereinafter, "Hy-Vee" or "Defendant") is an Iowa corporation, authorized to conduct business in the State of Kansas, and may be served through its Registered Agent, The Corporation Company, Inc. 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

3.     All of the acts, conduct, and omissions of Defendant were performed by its agents, representatives, and employees while in the course and scope of their agency or employment.

1

**JURISDICTION AND VENUE**

4.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the acts complained of involve violations of Plaintiff's rights under federal statutes, specifically the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the Americans with Disabilities Act, As Amended, 42 U.S.C. §12101, et seq., ("ADAAA").

5.      Venue is proper within this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District, and the acts, transactions and events complained of herein and giving rise to Plaintiff's claims occurred in the District.

**FACTUAL ALLEGATIONS**

6.      Plaintiff was employed by Defendant for approximately five (5) years. Throughout her employment with Defendant, Plaintiff served in various positions at Hy-Vee's Olathe #2 Store, located at 18101 W. 119th Street, Olathe, Kansas 66061, until Plaintiff was constructively discharged on or about October 17, 2019.

7.      At all times herein mentioned, Plaintiff was an "employee" of Defendant, within the meaning of the ADEA and ADAAA and is entitled to all the benefits and protections of those laws.

8.      Defendant was an "employer" of Plaintiff within the meaning of the ADEA and the ADAAA.

9.      Throughout her employment with Defendant, Plaintiff was subject to the control of Defendant as to the means and manner of accomplishing her work as an employee.

10.     Defendant is engaged in an industry affecting commerce and it has employed 500 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

11.     Throughout her five years of employment with Defendant, Plaintiff performed all duties of any position she was asked as required, exceeded the expectations of her various positions, and received praise, raises, commendations, and excellent reviews for her work.

12.     Plaintiff was a successful and valued employee of Defendant's Olathe #2 Store throughout her employment with Defendant.

13.     Plaintiff is a 51-year-old female and she suffered or suffers from diagnosed medical conditions including fibromyalgia, scoliosis, celiac, osteo-arthritis, osteo-pyrosis, depression, anxiety, post-traumatic stress disorder, and related conditions or impairments that qualify for protection as disabilities under the ADAAA, either as actual disabilities, a record of disability, or because Plaintiff was regarded as disabled.

14.     Despite her medical conditions, Plaintiff was able to perform the essential functions of her position with Defendant, either with or without reasonable accommodations.

15.     Prior to and including her wrongful constructive termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of her employment in the form of a discriminatory, hostile work environment, the improper denial of reasonable accommodations, and her involuntary constructive termination due to her age, disability and/or retaliation by Defendant and its officers and managers, including but not limited to Plaintiff's direct supervisor, Ina Cavin.

16.     In September 2018, Plaintiff was required to take a medical leave of absence which was approved by Olathe #2's Human Resources Director, Peggy Dirks.  When Plaintiff was

cleared to return to work on October 14, 2018, Ms. Cavin initiated an ongoing pattern of discriminatory and hostile treatment towards Plaintiff.

17.     By way of example, Ms. Cavin initially subjected Plaintiff to an ongoing "silent treatment" based on Ms. Cavin's outrage that Plaintiff had required time off for one of her various qualifying disabilities.

18.     However, approximately three-weeks after Plaintiff returned to work, Ms. Cavin observed Plaintiff using a stool, as directed by a different Hy-Vee shift manager, because Plaintiff was experiencing pain based on one of her qualifying disabilities and knew she would be unable to stand throughout the entirety of her shift.

19.     When Ms. Cavin observed Plaintiff on the stool, Ms. Cavin directed a store manager to tell Plaintiff that she was not approved for any workplace accommodations and that if Plaintiff continued to sit, she would be sent home, unpaid, and required to get a revised release to return to work.

20.     Notably, the reason a stool was available in the area Plaintiff was assigned to work was because Defendant had approved one or more of Plaintiff's coworkers to use a stool as a reasonable accommodation for various medical conditions and/or disabilities.

21.     At or around this same time, Plaintiff was also informed by various coworkers who were close to Ms. Cavin that Ms. Cavin had been publicly complaining about Plaintiff based on her various medical conditions.

22.     By way of example, on one occasion, several of Plaintiff's coworkers heard Ms. Cavin unfavorably compare Plaintiff to a younger, non-disabled employee, noting: "Maybe Jennifer isn't Ms. Sunshine, but at least she shows up every day and doesn't leave early." Another

employee reported overhearing Ms. Cavin complain that with Plaintiff, "there was always something wrong [with her]" and that Ms. Cavin was "tired of it."

23.      Throughout 2018 and the first quarter of 2019, Plaintiff repeatedly expressed her objections to this illegal and discriminatory treatment; however, she continued to be subjected to discriminatory treatment in the form of a continued hostile environment and her eventual constructive discharge without any legitimate reason and in violation of Defendant's policies and procedures.

24.      On April 30, 2019, Defendant's discriminatory and harassing behavior towards Plaintiff hit its apex.  That morning, when Plaintiff arrived at work, she was immediately greeted by Ms. Cavin who immediately began yelling at Plaintiff for having purportedly spoken "too loudly" on the store's walkie-talkie's the day before.

25.      Later in the shift, a non-managerial, subordinate coworker of Plaintiff's began yelling at Plaintiff and subjecting her to further unlawful harassment.

26.      Plaintiff sought and found Hy-Vee's Olathe #2 Human Resources manager, Peggy Dirks, and asked to meet with her regarding the discriminatory and harassing behavior she was being subjected to.  Ms. Dirks asked Plaintiff to meet her in her office.

27.      Plaintiff asked Ms. Dirks to allow Plaintiff to walk with her to Ms. Dirks' office so as to avoid any further confrontations with Ms. Cavin or the other employee.

28.      The request was denied.

29.      When Ms. Cavin subsequently observed Plaintiff waiting outside of the Human Resources office, Ms. Cavin yelled at Plaintiff asking "what [her] problem [was] this time" and order Plaintiff into her office.

30.     Plaintiff initially refused, telling Ms. Cavin candidly that she wanted Ms. Dirks present to act as a witness or Plaintiff wanted to be allowed to return to her locker to retrieve her cellphone so she could record their conversation.

31.     Clearly agitated, Ms. Cavin stormed out of her office, found the first available employee, a produce manager, and called him into the office to "act as a witness."

32.     Ms. Cavin demanded that Plaintiff reveal what her "problem" was "this time."

33.     Plaintiff then began to recount her complaints about the treatment she had received from Ms. Cavin and one of her coworkers that morning.  Plaintiff also complained that she had been subjected to a pattern of unfair treatment and abuse by Ms. Cavin and that Ms. Cavin's history of abuse had created an atmosphere where even Plaintiff's subordinate employees believed they had free reign to yell at or harass Plaintiff.

34.     Plaintiff specifically complained that she believed the basis for the discriminatory and harassing behavior was her age and medical conditions.

35.     Still visibly agitated, Ms. Cavin called the coworker Plaintiff believed had verbally harassed her to Ms. Cavin's office.

36.     When the cashier arrived, Ms. Cavin asked Plaintiff to repeat her allegations so the coworker could respond.  Plaintiff described the morning's incidents in which the employee had warned Plaintiff she better "keep [her] ass behind the [customer service] counter."

37.     The coworker admitted the allegations and then launched into an approximately 15-minute verbal flurry of character and performance attacks.  Neither Ms. Cavin nor Ms. Dirks (who was also now present) stopped the cashier's verbal barrage, instead allowing her to continue and offering Plaintiff no room for a rebuttal.

38.     When the cashier was done, Ms. Cavin simply looked at Plaintiff and said, "is this issue solved?"

39.     After leaving Ms. Cavin's office upset and afraid, Plaintiff began to have a panic attack when she returned to her post at customer service.  Plaintiff began to sob uncontrollably, could not breath, and was forced to go home.

40.     The next day, still unable to regain her composure, Plaintiff's mother and daughter took Plaintiff to the Cottonwood Springs mental health facility where Plaintiff was put into treatment for major depressive disorder.

41.     Plaintiff remained at Cottonwood Springs for seven days.

42.     The day after Plaintiff was placed in Cottonwood for treatment, Plaintiff's mother called Defendant's Olathe Store #2 to try to figure out what had precipitated Plaintiff's need for treatment.

43.     Plaintiff's mother was put on the phone with Chris LNU, a store manager and Human Resources representative for Olathe #2.

44.     Chris LNU admitted to Plaintiff's mother that on April 30, 2019, and in the months leading up to April 30, 2019, Plaintiff had been the target of ongoing harassment, abuse, and mistreatment from Ms. Cavin.  Chris LNU also admitted that on April 30, 2019, Ms. Cavin's verbal abuse of Plaintiff had hit a crescendo that had caused Plaintiff's breakdown.

45.     While still at Cottonwood, Plaintiff also received a call from Ms. Dirks who informed Plaintiff she was being placed on a medical leave of absence.

46.     Plaintiff thanked Ms. Dirks and asked her to acknowledge the abuse she had witnessed by Ms. Cavin.  Ms. Dirks refused, repeating over-and-over she "wanted [Plaintiff] to get better."

47.     On or about May 8, 2019, Plaintiff began to receive short-term disability benefit payments from Hy-Vee.  Plaintiff was not given any corresponding FMLA paperwork or otherwise advised of her rights under the same.

48.     Without warning, on June 30, 2019, Plaintiff's short term disability benefits were cutoff.  Prior to being cutoff, Plaintiff was given no directions from Hy-Vee regarding what, if any steps she needed to be taking in her treatment to retain benefits.  Nor was Plaintiff given a return-to-work date or directions on how to establish the same.

49.     Plaintiff did know, that as of June 30, 2019, Ms. Cavin was still the Store Director of Defendant's Olathe #2 location.

50.     On or about September 21, 2019, Plaintiff sent Ms. Dirks an email regarding the loss of benefits.  In the email, Plaintiff noted she was disappointed by Hy-Vee's decision, Plaintiff noted she had received no direction from HR regarding what her rights or responsibilities were under Hy-Vee's short-term disability policy, and that she had still received no information regarding what steps were needed in order to return Plaintiff to work with reasonable accommodations that would ensure her safety and health.

51.     Plaintiff also notified Ms. Dirks that Plaintiff did not believe her medical provider her would approve Plaintiff to return to work under the supervision of Ms. Cavin.

52.     Plaintiff also informed Ms. Dirks she had recently been in contact with Defendant's regional HR director and that Defendant's regional HR director had expressed sympathy based on the treatment Plaintiff had received at the hands of Ms. Cavin and that he understood Plaintiff would likely never be able to return to work under the direction of Ms. Cavin.

53.     Based on the foregoing, Plaintiff asked Ms. Dirks to provide clarification regarding the nature and length of her approved medical leave and the current state of her employment status

8

with Defendant.  Plaintiff also asked Ms. Dirks to provide specific direction regarding any upcoming deadlines that would be required for her to extend her leave, what, if anything, Plaintiff would need to do to initiate a conversation about reasonable accommodations and her return to work, and Plaintiff also asked about the possibility of being transferred to one of Defendant's other locations where she would no longer be under the supervision of Ms. Cavin.

54.     Not long after Plaintiff's September 21, 2019 email to Ms. Dirks, Ms. Dirks called Plaintiff to inform her that Hy-Vee: (1) would "allow" Plaintiff to return to Olathe #2 store *if* she could get clearance saying she was fit to return to duty; and (2) represented that even though Plaintiff would be returning to Olathe #2 store, Plaintiff would not be under the direct supervision of Ms. Cavin.

55.     When Plaintiff complained that even if she was not under Ms. Cavin's direct supervision, Ms. Cavin would still be in the store, that interactions with Ms. Cavin could trigger Plaintiff's recently diagnosed PTSD, depression, and anxiety, and that Ms. Cavin would ultimately still have final authority on all decisions regarding Plaintiff's schedule, work assignments, promotions, pay rate, requests for time off, etc.

56.     Ms. Dirks was dismissive of Plaintiff's concerns and indicated those were the only accommodations Defendant was willing to offer.

57.     Plaintiff then asked if Defendant would be willing to move her to any of the numerous other Hy-Vee locations.  Again, Ms. Dirks was dismissive, saying that if Plaintiff wanted to put in for a transfer, she would have to do so through the standard transfer system, that Plaintiff would receive no input or support from Olathe #2, that she would enjoy no "preferred" status in the transfer process, that Defendant would take no efforts to help her find a new location, and Defendant refused to ensure Plaintiff a "safe" landing spot.

58.     Upon information and belief, Hy-Vee has previously assisted employees in the transfer process, even when such employees where not seeking transfer as a reasonable accommodation for a qualifying disability.

59.     Because Defendant was unwilling to assist Plaintiff in a transfer, and fearful that further interactions with Ms. Cavin could trigger Plaintiff's PTSD, depression, or anxiety, Plaintiff explained to Ms. Dirks that she believed she was being terminated from her employment by Defendant and that she had no other reasonable alternative but to seek employment with another company.

60.     Upon information and belief, Plaintiff's treatment is representative of the type of discriminatory and retaliatory treatment that Defendant's Olathe #2 store engages in against older and/or disabled employees in favor of younger, and/or non-disabled, less qualified employees.

61.     Upon information and belief, Defendant's Olathe #2 store engages in a broad-based pattern of discrimination and retaliation in the terms and conditions of employment including in the form of a hostile work environment and adverse employment decisions with respect to employees in protected classes who are similarly situated to Plaintiff.

62.     Prior to and including her wrongful constructive termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of her employment based on age, and/or disability discrimination, and/or retaliation by Defendant and its managers and employees in violation of the law.

63.     These adverse actions were also motivated in whole or in part due to Plaintiff's reports to her supervisor of a hostile environment or other reports of discriminatory and retaliatory conduct against Plaintiff.

64.     The true reasons for the discriminatory and retaliatory employment actions of Defendant against Plaintiff, including but not limited to those adverse employment actions set forth above, were illegal age, and/or disability discrimination, and/or retaliation for requesting accommodations for her disabling conditions, and/or for reporting concerns about illegal discrimination and retaliation.

65.     On or about February 24, 2020, Plaintiff filed a timely charge alleging age and disability discrimination, retaliation, and violations of law against Defendant with the Equal Employment Opportunity Commission ("EEOC") (copy attached as **Exhibit A**).

66.     On or about March 9, 2021 the EEOC mailed a Notice of Right to Sue to Plaintiff (copy attached as **Exhibit B**).

67.     This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC.

68.     Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## COUNT I – AGE DISCRIMINATION (ADEA)

69.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 68 above.

70.     Plaintiff's age was a determining factor in Defendant's intentional decisions to discriminate against her in the terms and conditions of her employment as set forth above, including but not limited to a discriminatory, hostile work environment, and her constructive discharge due to her age and/or retaliation by Defendant and its officers and managers, including but not limited to Plaintiff's direct supervisor.

71.     Defendant manifested its illegal age bias through age biased comments and actions as set forth above and herein, including but not limited to her constructive termination while similarly situated, substantially younger employees were treated more favorably and not subjected to the same type of hostile and discriminatory comments and actions and termination.

72.     Defendant's discriminatory and retaliatory treatment of Plaintiff was such that no reasonable person would have remained employed or would have been willing to accept reinstatement or reemployment under the terms and conditions that Defendant demanded.

73.     Defendant knew, or should have known, of the age discrimination against its employees, including Plaintiff.

74.     Defendant failed to take prompt and appropriate corrective action to end the age discrimination against its employees, including Plaintiff.

75.     Defendant failed to make good faith efforts to enforce its policies to prevent age discrimination against its employees, including Plaintiff.

76.     Defendant's conduct was knowing, willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADEA, thus justifying an award of liquidated damages.

77.     As a direct result of Defendant's illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for future loss of wages and benefits,

liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT II – RETALIATION (ADEA)

78.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 77 above.

79.     Plaintiff had a good faith, reasonable belief that she was being subjected to unlawful employment practices including disparate treatment by Defendant on the basis of her age in the terms and conditions of her employment compared with similarly situated, substantially younger employees, and she reported the same to Defendant.

80.     Defendant retaliated against Plaintiff because of her opposition to unlawful discriminatory employment practices including by subjecting her to a discriminatory, hostile work environment and constructive termination due to her age for false, pre-textual reasons and other prior and subsequent adverse actions as set forth above herein.

81.     Plaintiff's opposition to unlawful discriminatory employment practices was a determining factor in Defendant's decision to subject her to adverse employment actions including those actions set forth above and herein and including the constructive termination of her employment.

82.     Defendant's discriminatory and retaliatory treatment of Plaintiff was such that no reasonable person would have remained employed or would have been willing to accept reinstatement or reemployment under the terms and conditions that Defendant demanded.

83.     Defendant's conduct was knowing, willful and/or outrageous as it intentionally and knowingly violated Plaintiff's rights under the ADEA, and is sufficient therefore to warrant an

award of liquidated damages.

84.     As a direct result of Defendant's illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count IV, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest, through the date of trial, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT III – DISABILITY DISCRIMINATION (ADAAA)

85.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 84 above.

86.     Defendant intentionally discriminated against Plaintiff because of her disabilities, her record of a disability, or because they regarded her as disabled in the terms and conditions of her employment, including, but not limited to, by refusing to provide reasonable accommodations for her disability, by subjecting her to adverse job actions as set forth above herein, including a discriminatory, hostile work environment and her constructive discharge for pre-textual reasons.

87.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of that term as utilized in the ADAAA, either as an individual with a physical or mental impairment related to her diagnoses of various physical or mental impairments and related conditions, who can perform all of the essential functions of her job with or without

accommodations, or because she has a record of such an impairment, or because Defendant regarded her as having such an impairment.

88.     The Defendant discriminated against Plaintiff on the basis of her disability by (a) not making reasonable accommodations to the known limitations of an otherwise qualified individual with a disability; (b) denying employment opportunities to and thereafter terminating or refusing to rehire an employee who is an otherwise qualified individual with a disability; (c) subjecting a qualified individual with a disability to different terms, conditions and privileges of employment than the terms, conditions and privileges available to non-disabled employees; and (d) refusing to accommodate and otherwise interfering with an individual in her exercise of rights under federal law prohibiting discrimination on the basis of a qualified disability, thereby violating the ADAAA.

89.     Defendant's discriminatory and retaliatory treatment of Plaintiff was such that no reasonable person would have remained employed or would have been willing to accept reinstatement or reemployment under the terms and conditions that Defendant demanded.

90.     Defendant's illegal treatment of Plaintiff was motivated by her protected disability status related to her anxiety and stress disorder and related impairments.

91.     Plaintiff was able to perform the essential functions of her position with Defendant throughout her employment and at the time of her termination, either with or without reasonable accommodations.

92.     Defendant's beliefs regarding Plaintiff's anxiety and stress disorder, PTSD, and other various medical conditions and their related treatments were a motivating factor in Defendant's adverse treatment of Plaintiff as set forth above and herein, including Defendant's decision to constructively terminate her employment.

93.     Defendant was aware of Plaintiff's medical impairments and her need and requests for accommodations.

94.     Defendant failed to engage in the interactive process and failed to discuss or provide any reasonable accommodations to address Plaintiff's medical impairments, assuming such impairments qualify as disabilities under the ADAAA.

95.     As a direct and proximate result of the continuing pattern and practice of discrimination directed toward her or disparate treatment of her and of the Defendant's termination of her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

96.     The Defendant's conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish the Defendant and to deter the Defendant from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count V, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT IV – ADAAA RETALIATION

97.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 97 above.

98.     Plaintiff had a good faith, reasonable belief that Defendant was engaging in unlawful employment practices that are prohibited under the ADAAA, including disparate treatment by Defendant in the terms and conditions of her employment compared with similarly situated, non-disabled employees, and she reported her opposition to these unlawful practices to the Defendant and requested accommodations for her qualifying disabling conditions as set forth herein.

99.     Defendant retaliated against Plaintiff in the terms and conditions of her employment because of her opposition to unlawful employment practices and/or because of her protected actions in requesting reasonable accommodations for a qualified disability, including but not limited to, by refusing to provide other reasonable accommodations, by subjecting her to disability biased comments and actions, and other adverse actions impacting the terms and conditions of her employment including and by their constructive termination of Plaintiff for false, pre-textual reasons.

100.     Defendant's discriminatory and retaliatory treatment of Plaintiff was such that no reasonable person would have remained employed or would have been willing to accept reinstatement or reemployment under the terms and conditions that Defendant demanded.

101.     Plaintiff's opposition to the Defendant's unlawful employment practices, and/or her requests for accommodation, were motivating factors in the Defendant's decision to retaliate against her in the terms and conditions of her employment.

17

102.    As a direct and proximate result of the Defendant's continuing pattern and practice of illegal retaliation directed toward her or disparate treatment of her and of the Defendant's termination of her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, future medical expense, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

103.    Defendant failed to make good faith efforts to enforce its policies to prevent discrimination and retaliation against its employees, including Plaintiff.

104.    Defendant's retaliatory conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADAAA, thus justifying an award of punitive damages in an amount sufficient to punish the Defendant and to deter it from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendant on Count VI and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in Counts I - VII.

Respectfully submitted,

SEACORD LAW LLC

*/s/  Nickalaus Seacord*
Nickalaus Seacord, Mo. Bar # 63232
1308 NE Windsor Drive
Lee's Summit, MO  64086
(T) 816.514.0414
nick@seacordlaw.com